

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **JAN 1 0 2019**

*CHIEF JUSTICE*

This opinion was filed for record

at **8 a.m.** on **Jan 10, 2019**

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95281-7 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| EVERGREEN FREEDOM FOUNDATION | ) | |
| d/b/a FREEDOM FOUNDATION, | ) | |
| | ) | |
| Petitioner. | ) | Filed **JAN 1 0 2019** |

MADSEN, J.—This case involves statutory interpretation concerning application

of the reporting requirements contained in the Fair Campaign Practices Act (FCPA),

chapter 42.17A RCW. The specific issue is how the FCPA reporting requirements in

RCW 42.17A.255 and the definition in RCW 42.17A.005(4) ("ballot proposition")[1] are to

be applied in the context of local initiatives. For the reasons explained below, we hold

---

[1] The FCPA was amended twice in the recent legislative session. Laws of 2018, chapter 111 does not take effect until January 1, 2019. Laws of 2018, chapter 304 took effect June 7, 2018, but the amendments to RCW 42.17A.255 in that bill were vetoed. The amendments otherwise added a definition unrelated to this case, but resulted in the "ballot proposition" definition at issue here to be renumbered as RCW 42.17A.005(5). To avoid confusion, and to remain consistent with the parties' briefing, we refer to the relevant definitional subsection addressing "ballot proposition" by its former designation as RCW 42.17A.005(4).

that under the circumstances of this case, pro bono legal services, which Evergreen Freedom Foundation provided to initiative proponents, were reportable to the Public Disclosure Commission (PDC) under the above noted statutes. We affirm the Court of Appeals' reversal of the trial court's CR 12(b)(6) dismissal of the State's FCPA regulatory enforcement action and remand to the trial court for further proceedings.

## FACTS

In 2014, Evergreen Freedom Foundation (EFF) staff created sample municipal ordinances and ballot propositions for citizens to use to advance certain causes to their local city councils or commissions. Local residents in the cities of Sequim, Chelan, and Shelton utilized those samples in filing two ballot propositions in each city, one to require collective bargaining negotiation sessions to be publicly conducted and the second to prohibit union security clauses in city collective bargaining agreements.

The proponents submitted the proposed measures to their local city clerks along with signatures they had gathered in support of the measures. They asked their respective city councils or commissions either to pass the measures as local ordinances or, if the councils or commissions did not agree, to alternatively place each measure on the local ballot for a vote. None of the cities passed the measures as ordinances or placed the ballot propositions on the local ballots.[2]

---

[2] The cities of Chelan and Shelton voted to neither adopt the propositions nor place them on the ballot. The city of Sequim concluded that it would table the issue until a later meeting but never acted further.

In response, EFF employees, who are attorneys, participated in lawsuits against each jurisdiction on behalf of the local resident proponents. Each suit sought a judicial directive to the respective city to put each measure on the local ballot. Each lawsuit ended in a superior court dismissing the case, and those decisions were not appealed.

EFF did not file any campaign finance disclosure reports with the PDC identifying the value of the legal services it provided to the resident proponents in support of the local ballot propositions.[3] In February 2015, the attorney general received a citizen action complaint about EFF's failure to report the value of legal services it provided in support of these local ballot measures.[4] The State conducted an investigation and then filed a civil regulatory enforcement action against EFF in Thurston County Superior Court, alleging that EFF failed to report independent expenditures it made in support of the noted local ballot propositions.[5]

---

[3] As discussed below, the FCPA, RCW 42.17A.255, requires a person (organization) to file a report with the PDC disclosing all "independent expenditures" totaling $100 or more during the same election campaign. RCW 42.17A.255(2). Subsection (1) of that statue defines "independent expenditure" as "any expenditure that is made in support of or in opposition to any candidate or ballot proposition." RCW 42.17A.255(1). "Ballot proposition" is defined in RCW 42.17A.005(4) as

> any "measure" as defined by RCW 29A.04.091 [i.e., "any proposition or question submitted to the voters"], or any initiative, recall, or referendum proposition proposed to be submitted to the voters of the state or any municipal corporation, political subdivision, or other voting constituency from and *after the time when the proposition has been initially filed with the appropriate election officer* of that constituency *before its circulation for signatures.*

(Emphasis added.)

[4] The letter was filed on behalf of the Committee for Transparency in Elections and contained notice that if the State did not take action within 45 days, the complainant intended to file a citizen's action against EFF "as authorized under [RCW] 42.17A.765(4)." Clerk's Papers at 65.

[5] No other citizen action complaints related to these local ballot propositions have been filed with the Attorney General's Office.

EFF moved to dismiss the State's enforcement action, asserting that the local propositions were not "ballot propositions" as defined in RCW 42.17A.005(4). Clerk's Papers at 24. EFF argued that because the local initiative process generally requires signatures to be gathered and submitted before the ballot propositions are filed with the local elections official, the local propositions were not "ballot propositions" under RCW 42.17A.005(4) and, therefore, no disclosure was required unless and until the proposition became a "measure" placed on a ballot. *Id.* at 19-33.

The State opposed the motion and the statutory interpretation asserted by EFF. The State argued that EFF's reading of the statute would effectively exclude from public disclosure all funds raised and spent on local ballot propositions until they advanced to the ballot, contrary to the stated purpose and intent of the FCPA.

The superior court granted EFF's motion for dismissal under CR 12(b)(6) (failure to state a claim). It found the statutes at issue here to be "ambiguous and vague." Verbatim Report of Proceedings at 23. The superior court further found that the State had not "sufficiently established that this situation involved a ballot measure that gave them the opportunity to require that such be reported," explaining that "such" meant "legal services that were provided on a pro bono basis before the matter ever went to any kind of vote." *Id.* at 23-24.

The State sought direct review and this court transferred the case to Division Two of the Court of Appeals. Order, *State v. Evergreen Freedom Found.*, No. 93232-8 (Wash. Mar. 29, 2017). The Court of Appeals reversed, holding in a partially published opinion that "under the only reasonable interpretation" of the definition of "ballot

4

proposition" in the FCPA, the local initiatives qualified as ballot propositions at the time EFF provided legal services because the initiatives had been filed with local election officials. *State v. Evergreen Freedom Found.*, 1 Wn. App. 2d 288, 293, 404 P.3d 618 (2017) (published in part). The Court of Appeals also rejected EFF's argument that reporting requirements could apply only to electioneering that occurs once a proposition has been placed on the ballot. *Id.* at 306. The court concluded that RCW 42.17A.255 does not violate EFF's First Amendment rights. *Id.* at 307. In the unpublished portion of the opinion, the Court of Appeals rejected EFF's other arguments, including that the statute is unconstitutionally vague. *Evergreen Freedom Found.*, No. 50224-1-II, slip op. (unpublished portion) at 22-24, http://www.courts.wa.gov/opinions/pdf/D2%2050224-1-II%20Published%20Opinion.pdf. EFF petitioned for review, which this court granted. *State v. Evergreen Freedom Found.*, 190 Wn.2d 1002 (2018).

## ANALYSIS

### Standard of Review

This court reviews issues of statutory construction and constitutionality de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013); *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017). When possible, this court derives legislative intent from the plain language enacted by the legislature; "[p]lain language that is not ambiguous does not require construction." *Evans*, 177 Wn.2d at 192. However, if more than one interpretation of the plain language is reasonable, the statute is ambiguous, and the court must then engage in statutory construction. *Id.* at 192-93. The

court may then look to legislative history for assistance in discerning legislative intent. *Id.* at 193.

In construing a statute, the fundamental objective is to ascertain and carry out the people's or the legislature's intent. *See Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). This court looks to the entire "'context of the statute in which the provision is found, [as well as] related provisions, amendments to the provision, and the statutory scheme as a whole.'" *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015) (quoting *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015)); *see also G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 310, 237 P.3d 256 (2010) ("enacted statement of legislative purpose is included in a plain reading of a statute").

> The meaning of words in a statute is not gleaned from [the] words alone but from "all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another."

*Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007) (internal quotation marks omitted) (quoting *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994)); *see also Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002) (clarifying "plain meaning" is "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question").

## FCPA Background and Application

In 1972, voters in Washington adopted Initiative 276 (I-276), which established

the PDC and formed the basis of Washington's campaign finance laws. *Voters Educ.*

*Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 479, 166 P.3d 1174 (2007). I-276 is

codified in portions of chapter 42.17A RCW, which is now known as the FCPA. RCW

42.17A.909. I-276 was designed, in part, to provide the public with full disclosure of

information about who funds initiative campaigns and who seeks to influence the

initiative process. *See* LAWS OF 1973, ch. 1, § 1. In I-276, the people declared that it

would be

> the public policy of the State of Washington:
> (1) That political campaign and lobbying contributions and expenditures *be fully disclosed* to the public and that secrecy is to be avoided.
> . . . .
> (10) That the public's right to know of the financing of political campaigns and lobbying and the financial affairs of elected officials and candidates far outweighs any right that these matters remain secret and private.
> (11) . . . The provisions of this act shall be *liberally construed to promote complete disclosure* of all information respecting the financing of political campaigns and lobbying.

LAWS OF 1973, ch. 1, § 1 (emphasis added); *see also* RCW 42.17A.001(1), (10), (11).

With a 72 percent supporting vote, Washington voters adopted I-276 and required

financial disclosure for campaigns, including those related to initiatives, referenda, and

ballot measures. *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 996 (9th Cir.

2010).

I-276 established reporting requirements for anyone supporting or opposing a "ballot proposition." LAWS OF 1973, ch. 1, §§ 2(2), 10(1); *see also id.* §§ 3-11 (I-276 provisions establishing reporting requirements); RCW 42.17A.255. For example, an "'independent expenditure' [is] any expenditure that is made *in support of or in opposition to any* candidate or *ballot proposition* and is not otherwise required to be reported." RCW 42.17A.255(1) (emphasis added). Reporting requirements are triggered once an expenditure amount crosses a threshold of $100. RCW 42.17A.255(2).[6]

I-276 defined "ballot proposition" to mean "any 'measure' as defined by [former] R.C.W. 29.01.110, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of any specific constituency *which has been filed with the appropriate election officer of that constituency.*" LAWS OF 1973, ch. 1, § 2(2) (emphasis added). When I-276 was adopted in 1972, "measure" meant "any proposition or question submitted to the voters of any specific constituency." LAWS OF 1965, ch. 9, § 29.01.110; former RCW 29.01.110 (1972).[7]

In 1975, soon after the adoption of I-276, the legislature made adjustments to the definition of "ballot proposition" to clarify that the term applied to both statewide and local initiatives, recalls, and referenda:

---

[6] As originally adopted in I-276, this provision was worded differently, but it reflected the same intent: "Any person who makes an expenditure in support of or in opposition to any candidate or proposition (except to the extent that a contribution is made directly to a candidate or political committee), in the aggregate amount of one hundred dollars or more during an election campaign, shall file with the [PDC] a report." LAWS OF 1973, ch. 1, § 10(1).

[7] In 2003, the legislature removed the last phrase of the definition of "measure," so that the term now includes "any proposition or question submitted to the voters." LAWS OF 2003, ch. 111, § 117. Former RCW 29.01.110 is now codified as RCW 29A.04.091.

8

> "Ballot proposition" means any "measure" as defined by [former] RCW 29.01.110, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of ((any specific)) the state or any municipal corporation, political subdivision or other voting constituency ((which)) from and after the time when such proposition has been initially filed with the appropriate election officer of that constituency prior to its circulation for signatures.

LAWS OF 1975, 1st Ex. Sess., ch. 294, § 2(2). Thus, the 1975 legislature clarified that "ballot proposition" includes local propositions "from and after the time when such proposition has been initially filed with the appropriate election officer . . . prior to its circulation for signatures."[8] *Id.*

As noted, the 1975 legislature added the language in the definition that refers specifically to "any municipal corporation, political subdivision or other voting constituency." *Id.* It simultaneously added "prior to its circulation for signatures." *Id.*

The issue here is that the procedures for statewide and local initiatives differ. For a statewide initiative, many steps have to be navigated *before* the signature gathering stage is reached: the proponent files the proposed initiative with the secretary of state (RCW 29A.72.010), the code reviser reviews and then certifies that (s)he has reviewed the proposed measure and suggested revisions to the proponent (RCW 29A.72.020), then the secretary of state gives the proposed measure a serial number (RCW 29A.72.040), then the attorney general formulates a ballot title and summary (RCW 29A.72.060), and any person dissatisfied with the title or summary may appeal to the superior court (RCW

---

[8] The definition of "ballot proposition" has since been updated to reflect the current codification of the definition of "measure" and to replace "prior to" with "before," but it otherwise remains the same today. RCW 42.17A.005(4); *see* LAWS OF 2010, ch. 204, § 101(4).

9

29A.72.080); after all that, the proponent then begins gathering signatures (RCW 29A.72.090-.150). *See generally* RCW 29A.72.010-.150. If an initiative to the people has sufficient valid signatures, it goes on the ballot at the next general election. CONST. art. II, § 1. If an initiative to the legislature has sufficient valid signatures, it is presented to the legislature first, but if the legislature declines to adopt it, the initiative appears on the following general election ballot. *Id.* § 1(a).

For a local initiative, the proponent generally gathers signatures and submits them along with the proposed ballot measure to the local election official. *See* RCW 35.17.260. If the petition contains the required number of valid signatures, the city's or the town's council or commission must either pass the proposed ordinance or submit the proposition to a vote of the people.[9] *Id.*

Thus, RCW 42.17A.005(4)'s language fits neatly with the statewide initiative procedures, but it creates tension as to the noted local initiative procedures in that the second prong of RCW 42.17A.005(4) expressly applies to both state and local initiatives, but its final phrase, "before its circulation for signatures," seems at odds with the local initiative procedures noted above.

---

[9] *See also* RCW 35.17.240-.360 (authorizing cities using the commission form of government to adopt the initiative and referendum processes); RCW 35A.11.100 (authorizing same processes for noncharter code cities); SEQUIM MUNICIPAL CODE 1.15 (adopting the initiative and referendum processes set forth in RCW 35A.11.080-.100); SHELTON CITY CODE 1.24.010 (adopting the initiative and referendum processes in chapter 35.17 RCW, via adoption of chapter 35A.11 RCW); *cf.* CHELAN MUNICIPAL CODE 2.48.050-.210 (providing for the initiative process), .080 (providing sponsors with an extended 90-day window within which to gather sufficient valid signatures after the initiative is initially submitted).

The State argues that "[p]re-amendment, the definition already incorporated propositions as soon as they were filed and it already incorporated signature gathering for state initiatives, so there was no need to add the phrase 'prior to circulation for signatures' unless the legislature intended to clarify that the definition also covers the signature-gathering period for local propositions."[10] State of Washington's Suppl. Br. at 9. In the State's view, the amendment "ensured the statute would be applied according to the people's purpose: full and complete public disclosure of expenditures related to ballot propositions, including those made before a proposition appears on the ballot." Id. This is a fair and plain reading of the above statute, giving effect to all its parts. And, as importantly, the State's reading of the statute comports with the FCPA's stated policy and express directive that its provisions be "liberally construed to promote complete disclosure of all information respecting the financing of political campaigns." RCW 42.17A.001(11); see Campbell & Gwinn, 146 Wn.2d at 11 (plain meaning is discerned from all that the legislature has said in the statute and related statutes); see also Filo Foods, LLC v. City of SeaTac, 183 Wn.2d 770, 792-93, 357 P.3d 1040 (2015) (this court assumes the legislature does not intend to create inconsistency and, thus, reads statutes together to achieve a harmonious total statutory scheme that maintains each statute's integrity).

---

[10] As noted, the original definition of "ballot proposition" in the FCPA included "any initiative . . . proposed to be submitted to the voters of any specific constituency which has been filed with the appropriate election officer of that constituency." LAWS OF 1973, ch. 1, § 2(2). For statewide initiatives, this definition already incorporated the signature-gathering phase because, for a statewide initiative, the sponsor must file the proposed initiative before circulating it for signatures. See RCW 29A.72.010-.150 (discussed above).

EFF counters that the plain language of the statute controls, arguing that because the signatures were already gathered when the proposed initiatives were filed with the local election officials, the definition of "ballot proposition" is not met and no reporting requirement is triggered. But this reading not only undermines the stated purpose of the FCPA, it also ignores the language added to RCW 42.17A.005(4) in 1975 that expressly applies that provision to local initiatives.

EFF further contends that RCW 42.17A.005(4) and RCW 42.17A.255(1) "apply only to electioneering," which EFF contends never occurred here because the local initiatives were never placed on the ballot. EFF Suppl. Br. at 11 (emphasis omitted). First, EFF's reliance on *Brumsickle* as supporting EFF's contention is misplaced. That case did not so hold. *See id.* (misquoting *Brumsickle*, 624 F.3d at 998). Further, as noted, both statutes at issue here broadly impose reporting requirements concerning "*any expenditure* that is made in support of or in opposition to *any* candidate or *ballot proposition*," RCW 42.17A.255(1) (emphasis added), with "ballot proposition" defined to include "*any initiative* . . . proposed to be submitted to the voters." RCW 42.17A.005(4) (emphasis added). The noted language is simply not restricted to electioneering, as EFF asserts. Moreover, where litigation is being employed as a tool to block adoption of an initiative or to force an initiative onto the ballot, as was attempted here, the finances enabling such support (or opposition) would indeed appear to fall within the "any expenditure," triggering the reporting obligation noted above. The contention that litigation support does not qualify as a reportable independent expenditure ignores the express purpose of the FCPA in the context of modern politics. *See, e.g.,*

12

*Huff v. Wyman*, 184 Wn.2d 643, 645, 361 P.3d 727 (2015) (litigation brought by initiative opponents seeking to enjoin placement of initiative on the ballot); *Filo Foods, LLC v. City of SeaTac*, 179 Wn. App. 401, 403, 319 P.3d 817 (2014) (litigation over whether a local minimum wage initiative qualified for the ballot).[11]

In sum, giving meaning to *all* of the language in RCW 42.17A.005(4) and complying with the FCPA's directive for liberal construction, we determine that the amended language in RCW 42.17A.005(4) was intended to pick up the expenditures prior to signature gathering, regardless of when they are gathered, but only if the measure is actually filed with an election official. Applying this holding here, and in light of the FCPA's history, purpose, and the particular facts of this case, EFF's pro bono legal services were reportable to the PDC under RCW 42.17A.255 and RCW 42.17A.005(4).

The FCPA Provisions Are Not Unconstitutionally Vague

EFF contends that RCW 42.17A.255(1) and RCW 42.17A.005(4) are unconstitutionally vague because "[n]o reasonable person can know how to conform to the applicable statutory requirements." EFF Suppl. Br. at 16-17. We disagree.

---

[11] EFF cites *Coloradans for a Better Future v. Campaign Integrity Watchdog*, 2018 CO 6, 409 P.3d 350, as supporting its viewpoint, but that case is inapposite. The court there held that uncompensated legal services to a political organization were "not 'contributions' to a political organization under Colorado's campaign-finance laws." *Id.* at ¶ 41. But that determination turned on application of specific statutory language that is not present here. *Id.* at ¶¶ 28-40.

EFF also cites to *Farris v. Seabrook*, 677 F.3d 858 (9th Cir. 2012), but that case is also inapposite. There, the Ninth Circuit Court of Appeals affirmed the grant of a preliminary injunction barring enforcement of a statute that imposed contribution limits regarding a political (recall) committee. But that case applied a different standard in the contributions limitations context (i.e., applying "closely drawn" scrutiny to contribution *limits* based on a First Amendment challenge). *Id.* at 865 n.6. As discussed below, that is not the appropriate standard here.

Statutes are presumed to be constitutional, and the party asserting that a statute is unconstitutionally vague must prove its vagueness beyond a reasonable doubt. *Voters Educ. Comm.*, 161 Wn.2d at 481. In the First Amendment context, the asserting party may allege that a statute is either facially invalid or invalid as applied. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 612, 192 P.3d 306 (2008). A facial challenge asserts that the statute cannot be properly applied in any context. *City of Spokane v. Douglass*, 115 Wn.2d 171, 182 n.7, 795 P.2d 693 (1990). In an as applied challenge, the statute must be considered in light of the facts of the specific case before the court. *Am. Legion Post*, 164 Wn.2d at 612.

"'A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. The purpose of the vagueness doctrine is to ensure that citizens receive fair notice as to what conduct is proscribed, and to prevent the law from being arbitrarily enforced.'" *In re Contested Election of Schoessler*, 140 Wn.2d 368, 388, 998 P.2d 818 (2000) (internal quotation marks omitted) (quoting *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739-40, 818 P.2d 1062 (1991)). However, vagueness is not simply uncertainty as to the meaning of a statute. *Am. Legion Post*, 164 Wn.2d at 613. In determining whether a statute is sufficiently definite, the provision in question must be considered within the context of the entire enactment and the language used must be afforded a sensible, meaningful, and practical interpretation. *Id.* "A court should not invalidate a statute simply because it could have been drafted with greater precision." *Id.* Moreover, "'a statute is not unconstitutionally vague merely because a person cannot

predict with complete certainty the exact point at which [that person's] actions would be classified as prohibited conduct.'" *Schoessler*, 140 Wn.2d at 389 (alteration in original) (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).

A statute's language is sufficiently clear when it provides explicit standards for those who apply them and provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Voters Educ. Comm.*, 161 Wn.2d at 489. Here, EFF contends that the definition of "ballot proposition" cannot apply to local initiatives and the obligation to report independent expenditures cannot apply to activities beyond electioneering. But those assertions are refuted by the statutory language as discussed herein. As explained above, a local initiative becomes a ballot proposition when it is filed with local elections officials, and here all of the initiatives in question were filed before EFF expended resources to support them. RCW 42.17A.005(4). Accordingly, the portions of the FCPA at issue here (RCW 42.17A.255 and .005(4)) are not unconstitutionally vague as applied. Likewise, there is no facial invalidity because the statutes at issue establish a clear course of conduct, requiring persons to report their independent expenditures. *Any* nonexempt independent expenditures in support of a ballot proposition must be reported under RCW 42.17A.255. EFF has not shown that there is no set of facts, including the circumstances here, in which the statute could not be constitutionally applied. *Douglass*, 115 Wn.2d at 182 n.7. We hold that RCW 42.17A.005(4) and RCW 42.17A.255 are not unconstitutionally vague.

The FCPA Provisions Do Not Violate the First Amendment

EFF contends that the "State's enforcement action impermissibly infringes on the Foundation's [First Amendment] free speech and privacy of association rights." EFF Suppl. Br. at 21; U.S. CONST. amend. I. We disagree.

In addressing a First Amendment challenge to the "independent expenditure" provision of the FCPA at issue here, the Ninth Circuit Court of Appeals concluded in *Brumsickle*, 624 F.3d at 994-95, that "Washington State's disclosure requirements do not violate the First Amendment." The Ninth Circuit court noted that the Supreme Court had concluded that "the government 'may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether.'" *Id.* at 994 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 319, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010)). "[A] campaign finance disclosure requirement is constitutional if it survives *exacting scrutiny*, meaning that it is substantially related to a sufficiently important governmental interest." *Id.* at 1005 (emphasis added). As the *Citizens United* Court held, "'[D]isclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking.'" *Id.* (internal quotation marks and citation omitted) (quoting *Citizens United*, 558 U.S. at 366). Accordingly, "exacting scrutiny applies in the campaign finance disclosure context." *Id.* (citing *Citizens United*, 588 U.S. at 366-67; *Doe v. Reed*, 561 U.S. 186, 196, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 728-30, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008)).

16

In explaining the governmental interest at stake, the *Brumsickle* court noted that providing information to the electorate is "vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment." *Id.* Such vital provision of information has been repeatedly recognized as "a sufficiently important, if not compelling, governmental interest." *Id.* at 1005-06. The Ninth Circuit expounded on the importance of disclosure regarding candidates, and then drew parallels regarding ballot measures.

> [D]isclosure provides the electorate with information "as to where political campaign money comes from and how it is spent by the candidate" in order to aid the voters in evaluating those who seek federal office. It allows voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches. The sources of a candidate's financial support also alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office.

*Id.* at 1006 (alteration in original) (quoting *Buckley v. Valeo*, 424 U.S. 1, 66-67, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)).

Relevant here, the court observed that such considerations apply equally for voter-decided ballot measures. *Id.* "In the ballot initiative context, where voters are responsible for taking positions on some of the day's most contentious and technical issues, '[v]oters act as legislators,' while 'interest groups and individuals advocating a measure's defeat or passage act as lobbyists.'" *Id.* (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1106 (9th Cir. 2003)). The "high stakes of the ballot context only amplify the crucial need to inform the electorate that is well recognized in the context of candidate elections." *Id.*

17

> Campaign finance disclosure requirements . . . advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas. An appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another. The increased "transparency" engendered by disclosure laws "enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Citizens United*, [558 U.S. at 371]. As the Supreme Court has stated: "[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate." [*First Nat'l Bank v. Bellotti*, 435 U.S. 765, 791-92, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978)]. Disclosure requirements, like those in Washington's Disclosure Law, allow the people in our democracy to do just that.

*Id.* at 1008 (third alteration in original). The *Brumsickle* court concluded that "[t]here is a substantial relationship between Washington State's interest in informing the electorate and the definitions and disclosure requirements it employs to advance that interest." *Id.* at 1023; *see also Voters Educ. Comm.*, 161 Wn.2d at 483 (the right to free speech held by organizations that engage in political speech includes a "fundamental counterpart" that is the public's right to receive information); *State ex rel. Pub. Disclosure Comm'n v. Permanent Offense*, 136 Wn. App. 277, 284, 150 P.3d 568 (2006) ("Washington State has a substantial interest in providing the electorate with valuable information about who is promoting ballot measures and why they are doing so[;] . . . it is particularly important . . . that voters know whether other influences—particularly money—are affecting those who are otherwise known as grass-roots organizers.").

Given the State's important governmental interest in informing the public about the influence and money behind ballot measures, as noted above, and the FPCA's vital

role (via application of RCW 42.17A.255 and RCW 42.17A.005(4)) in advancing that interest, the disclosure requirement that operates under these statutes satisfies the exacting scrutiny standard. Accordingly, there is no impermissible infringement of EFF's First Amendment rights, and we so hold.

## CONCLUSION

We affirm the Court of Appeals' reversal of the trial court's CR 12(b)(6) dismissal of the State's regulatory enforcement action under the FCPA. Under the circumstances of this case, EFF's pro bono legal services were reportable to the PDC under RCW 42.17A.255 and RCW 42.17A.005(4). Those statutes are not unconstitutionally vague, nor does their application here violate EFF's First Amendment rights. We remand to the trial court for further proceedings.

No. 95281-7

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._       _Wiggins, J._

_Owens, J._       _Yu, J._

20

No. 95281-7

GORDON McCLOUD, J. (dissenting)—The Fair Campaign Practices Act

(FCPA), chapter 42.17A RCW, establishes requirements for political spending and

reporting. One FCPA statute requires people and organizations that make certain

political expenditures to report those expenditures to the Public Disclosure

Commission. It is well established that such a reporting requirement implicates the

First Amendment right to free speech. U.S. CONST. amend. I; *Utter v. Bldg. Indus.*

*Ass'n of Wash.*, 182 Wn.2d 398, 341 P.3d 953 (2015); *Voters Educ. Comm. v.*

*Public Disclosure Comm'n*, 161 Wn.2d 470, 166 P.3d 1174 (2007); *Human Life of*

*Wash. Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010).

In this case, both the trial court and the Court of Appeals expressly

acknowledged that the FCPA is ambiguous with respect to whether it compels

reporting of independent expenditures in support of initiatives not yet on the ballot

in noncharter cities. Clerk's Papers (CP) at 102 (order); Verbatim Report of

Proceedings (May 13, 2016) (VRP) at 23; *State v. Evergreen Freedom Found.*,

1 Wn. App. 2d 288, 303, 404 P.3d 618 (2017) (published in part). The majority

implicitly acknowledges the same thing. Majority at 10. The majority resolves

1

that ambiguity against the speaker and in favor of the government. But resolving an ambiguity in a statute implicating free speech against the speaker and in favor of the government violates controlling precedent of this court and of the United States Supreme Court.

I therefore respectfully dissent.

BACKGROUND

The State brought a civil enforcement action against Evergreen Freedom Foundation (Foundation) for failing to report independent expenditures in support of several "ballot propositions." CP at 5-10 (State's complaint); *see also* RCW 42.17A.255(3) (requiring reporting of independent expenditures in support of ballot propositions). Under the FCPA, a "ballot proposition" is

> any "measure" as defined by RCW 29A.04.091, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of the state or any municipal corporation, political subdivision, or other voting constituency from and after the time when the proposition has been initially filed with the appropriate election officer of that constituency *before its circulation for signatures*.[1]

*Former* RCW 42.17A.005(4) (2014), *recodified as* RCW 42.17A.005(5) (LAWS OF 2018, ch. 304, § 2) (emphasis added).

---

[1] Under RCW 29A.04.091, a "'[m]easure' includes any proposition or question submitted to the voters."

2

The Foundation admits that it did not report the expenditures at issue here—free legal representation for citizens attempting to place initiatives on the ballot in their municipalities. CP at 14-18 (Foundation's answer). The Foundation defends itself on the ground that its expenditures were not reportable. It argues that the FCPA's RCW 42.17A.255 requires a person or organization to report expenditures for "ballot propositions" "after" the submission to the election officer, which is "before its circulation for signatures." But the initiatives at issue here were not submitted to the election officer before circulation for signatures. The Foundation therefore concludes that those initiatives did not constitute ballot propositions within the meaning of former RCW 42.17A.005(4). CP at 22-28 (Foundation's motion to dismiss).

The Foundation continues that even if the initiatives did constitute ballot propositions within the meaning of former RCW 42.17A.005(4), that definition—particularly the language italicized above—is unconstitutionally vague as applied in this case. VRP at 8-9; Foundation's Suppl. Br. 13-17; Wash. Supreme Court oral argument, *State v. Evergreen Freedom Found.*, No. 95281-7 (June 28, 2018), at 9 min., 18 sec. through 10 min., 32 sec., *video recording by* TVW, Wash. State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2018061095.

3

The language of the statute defining "ballot proposition" is certainly confusing as applied to this case as the trial court, appellate court, and majority all note. The reason is that in this case, citizens were attempting to place initiatives on the ballot in three noncharter cities: Sequim, Shelton, and Chelan.[2] CP at 7. The initiative process in noncharter cities differs from the initiative process for statewide measures and the initiative process for certain charter cities. In noncharter cities, an initiative's proponent gathers signatures first and officially files the initiative with the city after. By contrast, at the statewide level and in certain charter cities, the proponent files first and gathers signatures after. *Compare* RCW 35.17.260 (establishing procedures for initiatives in cities with the commission form of government) *and* RCW 35A.11.100 (generally adopting for code cities the initiative procedures used in cities with the commission form of government), *with* chapter 29A.72 RCW (establishing procedures for statewide initiatives). *See also* RCW 35.22.200 (recognizing that charter cities "may provide for direct legislation by the people through the initiative"); *e.g.*, SEATTLE CITY

---

[2] *See* SEQUIM MUNICIPAL CODE 1.16.010 (identifying Sequim as a code city); SHELTON MUNICIPAL CODE 1.24.010 (identifying Shelton as a code city); CHELAN MUNICIPAL CODE 1.08.010 (identifying Chelan as a code city).

CHARTER art. IV, § 1.B; SEATTLE MUNICIPAL CODE ch. 2.08; TACOMA CITY

CHARTER art. II, § 2.19.

There is no dispute that former RCW 42.17A.005(4) would have covered the

Sequim, Shelton, and Chelan initiatives if they had made it onto the ballot, because

at that point they would have fallen within the definition of reportable "measures"

in cross-referenced RCW 29A.04.091. The issue in this case is whether former

RCW 42.17A.005(4) encompasses initiatives not yet on the ballot in such

noncharter cities.[3]

The trial court concluded that the tension between the statute's language and

the initiative process in noncharter cities could not be resolved. It noted that it had

"difficulty working through [the statutes] and understanding the position of the

parties[] because there is not a clearly stated policy regarding this kind of a

situation . . . ." VRP at 23. It therefore held that former RCW 42.17A.005(4) was

"ambiguous and vague." *Id.* Accordingly, it granted the Foundation's CR 12(b)(6)

---

[3] I assume for the purposes of this opinion that the Foundation's provision of free
legal representation to the citizens trying to place the initiatives on their local ballots
qualifies as "independent expenditures" under RCW 42.17A.255(1). The majority makes
the same assumption. As the Court of Appeals noted, the Foundation has not argued
otherwise. *Evergreen Freedom Found.*, 1 Wn. App. 2d at 306 n.5.

5

motion to dismiss for failure to state a claim on which relief could be granted. CP at 102 (order).

The Court of Appeals agreed that former RCW 42.17A.005(4) was "ambiguous" and added that the statute was "confusing." 1 Wn. App. 2d at 302-03. But it reversed the trial court's decision to dismiss on the ground that former RCW 42.17A.005(4) encompassed initiatives not yet on the ballot in noncharter cities. The Court of Appeals acknowledged that its interpretation of former RCW 42.17A.005(4) disregarded the "literal interpretation" of the statute's text. *Id.* at 304. That court explicitly stated that it "can and must ignore statutory language." *Id.* at 305.

The Foundation petitioned for review, which we granted. *State v. Evergreen Freedom Found.*, 190 Wn.2d 1002 (2018).

ANALYSIS

I.   Standard of Review

We review a trial court's grant of a CR 12(b)(6) motion to dismiss de novo. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014) (citing *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)).

6

II.    The Plain Language of Former RCW 42.17A.005(4) Is Ambiguous as Applied to Ballot Propositions Not Yet on the Ballot in Noncharter Cities

In interpreting a statute such as former RCW 42.17A.005(4), "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent . . . ." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The court discerns the legislature's intent by conducting a plain-meaning analysis—that is, by examining the statute's text and context. *Id.* at 11-12. "Of course, if, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.* at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)).

The language of former RCW 42.17A.005(4) perfectly tracks the initiative process for statewide measures and the initiative process for certain charter cities. It states that a "ballot proposition" is "any initiative . . . proposed to be submitted to the voters of the state or any . . . other voting constituency from and after the time when the proposition has been initially filed with the appropriate election officer of that constituency before its circulation for signatures." Former RCW

7

42.17A.005(4). A statewide measure or an initiative in a charter city following the statewide process *is* "filed . . . before its circulation for signatures." *Id.*

But the language of former RCW 42.17A.005(4) does not perfectly track the initiative process in noncharter cities. An initiative in a noncharter city *is not* "filed . . . before its circulation for signatures." *Id.* It is filed *after* its circulation for signatures. Thus, as the majority recognizes, the text of former RCW 42.17A.005(4) is "at odds" and in "tension" with the initiative process in noncharter cities. Majority at 10.

III.    The Majority Impermissibly Relies on Legislative History To Interpret Former RCW 42.17A.005(4)'s Plain Meaning

A.    *The Majority Relies on Former RCW 42.17A.005(4)'s Underlying History To Interpret the Statute*

The majority resolves that tension by relying on the statute's underlying history. It compares the definition of "ballot proposition" as enacted by the voters in 1972 with the definition of "ballot proposition" as amended by the legislature in 1975.[4] The 1975 amendment made the following changes:

---

[4] The legislature amended the definition of "ballot proposition" again in 2005 and 2010. But those amendments made technical, nonsubstantive changes only. LAWS OF 2005, ch. 445, § 6; LAWS OF 2010, ch. 204, § 101.

> "Ballot proposition" means any "measure" as defined by
> [RCW 29A.04.091], or any initiative, recall, or referendum
> proposition proposed to be submitted to the voters of ((any specific))
> the state or any municipal corporation, political subdivision or other
> voting constituency ((which)) from and after the time when such
> proposition has been initially filed with the appropriate election
> officer of that constituency [before] its circulation for signatures.

LAWS OF 1975, 1st Ex. Sess., ch. 294, § 2(2).

The State argues—and the majority accepts—that because the 1972

"'definition already incorporated propositions as soon as they were filed and

[because the 1972 definition] already incorporated signature gathering for state

initiatives . . . there was no need to add the phrase "[before] its circulation for

signatures" unless the legislature intended to clarify that the definition also covers

the signature-gathering period for local propositions.'" Majority at 10-11 (quoting

State of Washington's Suppl. Br. at 9). I agree.

### B. *Underlying History Is Legislative History, Not Context*

I disagree, however, with the majority that that conclusion is plain. The

majority characterizes the changes that the legislature makes to a statute from one

session to the next as part of the statute's context. That information is not the sort

of context that this court had in mind, however, when it incorporated context into

our plain-meaning analysis in *Campbell & Gwinn*.

In *Campbell & Gwinn*, we were concerned about a line of a cases that—in the name of plain meaning—had employed a method of interpretation that effectively isolated statutory text from its surrounding scheme. 146 Wn.2d at 9; *see also Habitat Watch v. Skagit County*, 155 Wn.2d 397, 417, 120 P.3d 56 (2005) (Chambers, J., concurring) ("[W]e . . . often interpreted the plain meaning of the statute section by section, without appropriate consideration for the legislature's overall plan contained within the four corners of the act."). We disavowed that line of cases and held that text's meaning must be derived from its words as well as its context. *Campbell & Gwinn*, 146 Wn.2d at 11-12. Instead of scrutinizing a particular term in a vacuum, a court must consider "all that the Legislature has said in the statute and related statutes." *Id.* at 11.

The majority goes beyond that, however. It relies on historical information that is not even part of the FCPA as it existed in 2014 when the Foundation provided the free legal representation at issue here. Hence, no reader would have consulted it to figure out whether expenditures were reportable in this context.

Instead, an initiative proponent in 2014 would have read former RCW 42.17A.005(4) and found it ambiguous—even in context with the rest of the FCPA—with respect to initiatives not yet on the ballot in noncharter cities. A person could not be faulted for reading the latter portion of the statute that begins

10

with "from and after the time [of filing]" and ends with "before its circulation for signatures" as modifying and limiting the text "any municipal corporation, political subdivision, or other voting constituency." In fact, that is arguably the more grammatical reading. The statute's unambiguous application to statewide measures and initiatives in certain charter cities—places like Seattle and Tacoma—only reinforces its ambiguity as to initiatives not yet on the ballot in noncharter cities. That is so because the statute still has a purpose, even if one concludes that it does not apply to initiatives not yet on the ballot in noncharter cities. Indeed, the legislature might reasonably have intended the statute to apply in the pre-ballot stage only at the statewide level and in the big cities where the political stakes, moneyed interests, and potential for mischief might be considered greatest. A plausible reading is that the statute does not apply to noncharter cities like Sequim, Shelton, and Chelan. The liberal construction mandate of RCW 42.17.001(11) would not alter that reading.

Thus, the majority's interpretation of the "plain meaning" of former RCW 42.17A.005(4) is really based on a comparison with a prior, historical, version of the statute—the 1972 version that the 1975 legislature amended. But while the legislative history can help courts resolve ambiguity in a statute, it cannot

11

make ambiguous language any less ambiguous to the reader. As applied to the circumstances of this case, former RCW 42.17A.005(4) is ambiguous.[5]

IV. Controlling Rules of Constitutional Law Bar This Court from Enforcing an Ambiguous Statute That Implicates Free Speech Rights

Under controlling decisions of this court and of the United States Supreme Court, an ambiguity is fatal to a statute implicating constitutional rights. "Under the Fourteenth Amendment, a statute may be void for vagueness 'if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Voters Educ. Comm.*, 161 Wn.2d at 484 (2007) (quoting *O'Day v. King County*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988)); U.S. CONST. amend. XIV. That standard is particularly strict when, as in this case, the First Amendment right to free speech is implicated. *Id.* at 485 ("[T]he Supreme Court has 'repeatedly emphasized that where First Amendment freedoms are at stake a greater degree of specificity and clarity of purpose is essential.'" (quoting *O'Day*, 109 Wn.2d at 810)); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) (treating disclosure requirements as burdens on the First Amendment). "Because First Amendment freedoms need breathing space to survive, government may regulate

---

[5] RCW 42.17A.005 has been amended 20 times since voters enacted it in 1972.

12

in the area only with narrow specificity." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S. Ct. 900, 84 L. Ed. 1213 (1940)). "If the line drawn . . . is an ambiguous one, [the court] will not presume" that the statute is constitutional. *Id.* at 432. Rather, an ambiguous statute bearing on such an important right must not be given effect. *Id.*

The majority states that the Foundation has the burden of proving that former RCW 42.17A.005(4) is unconstitutionally vague. Majority at 13, 15. The Court of Appeals took the same position in the unpublished portion of its opinion. *Evergreen Freedom Found.*, No. 50224-1-II, slip op. (unpublished portion) at 23, http://www.courts.wa.gov/opinions/pdf/D2%2050224-1-II%20Published%20Opinion.pdf. Like the Court of Appeals, the majority cites *Voters Education Committee* in support of its position. But *Voters Education Committee* says just the opposite. 161 Wn.2d at 481-82. The court in that case did recognize that a statute is ordinarily presumed constitutional. But it also noted that that presumption is not extended to statutes regulating speech. *Id.* at 482. That case, like this case, involved a constitutional vagueness challenge to the FCPA, and because the FCPA regulates speech, we placed the burden of demonstrating the

13

statute's clarity *on the State. Id.* Thus, to the extent that a burden exists in this

case, *Voters Education Committee* indicates that the State must bear it.

CONCLUSION

Because former RCW 42.17A.005(4) is ambiguous as applied to the

circumstances of this case, the statute cannot be given effect in these

circumstances. It is unconstitutionally vague as applied.[6]

I respectfully dissent.

---

[6] Recognizing that former RCW 42.17A.005(4) is unconstitutionally vague as applied to the circumstances of this case does not conflict with the holdings of our previous cases addressing the FCPA. *See Utter*, 182 Wn.2d 398; *Voters Educ. Comm.*, 161 Wn.2d 470. Nor does it conflict with the Ninth Circuit's holdings in *Brumsickle*, 624 F.3d 990. The questions in those cases, as well as their underlying facts, were all very different than the ones before the court today. The circumstances of this case—initiatives not yet on the ballot in noncharter cities—stand on their own, and the challenge—to former RCW 42.17A.005(4) in the aforementioned circumstances—is narrow.

14

Gordon McCloud, J.

Johnson, J.

González, J.

Stephens, J.

15